IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


CURTIS WAYNE BEMBO,
      Petitioner,

vs.                           Case No.:  3:11cv132/MCR/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 15).  Respondent filed an answer and relevant portions of the state court record (doc. 41).  Petitioner filed a reply (doc. 46).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 41).[1]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2008-CF-478, with one count of burglary of a dwelling with assault or

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 41).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

battery (Count 1), one count of battery upon a person 65 years of age or older (Count 2), one count of attempted sexual battery with a deadly weapon or force (Count 3), and one count of misdemeanor petit theft (Count 4) (Ex. B at 12–13).  Petitioner entered a "straight up" plea (meaning, with no agreement as to his sentence) of nolo contendere (Ex. C).  On September 23, 2008, Petitioner was adjudicated guilty and sentenced as a habitual felony offender to twenty-five (25) years of imprisonment on Count 1, five (5) years of imprisonment on Count 2, fifteen (15) years of imprisonment on Count 3, all to run concurrently, with pre-sentence jail credit of 188 days, and time served on Count 4 (Ex B at 26–33, Ex. D).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-4848 (Ex. B at 36, Ex. F).  The First DCA affirmed the judgment per curiam without written opinion on March 20, 2009, with the mandate issuing April 15, 2009 (Exs. H, I).  Bembo v. State, 6 So. 3d 54 (Fla. 1st DCA 2009) (Table).  Petitioner did not seek further review.

On May 17, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 1–5).  In an order rendered July 30, 2009, the state circuit court dismissed the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion (*id.* at 37–38).  Petitioner filed an amended motion on August 19, 2009 (*id.* at 43–54).  The state circuit court summarily denied it on October 1, 2009 (*id.* at 55–57).  Petitioner appealed the decision to the First DCA, Case No. 1D09-5907 (*id.* at 85–86).  The First DCA affirmed the judgment per curiam without written opinion on March 25, 2010, with the mandate issuing May 20, 2010 (Exs. K, L).  Bembo v. State, 34 So. 3d 3 (Fla. 1st DCA 2010) (Table).

On October 11, 2010, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D10-5521, alleging ineffective assistance of appellate counsel (Ex. M).  The First DCA denied the petition on the merits on November 8, 2010 (Ex. N).  Bembo v. State, 48 So. 3d 910 (Fla. 1st DCA 2010) (Mem).

On June 24, 2010, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (Ex. O at 1–5).  The state circuit court summarily denied

it on August 6, 2010 (Ex. P).  Petitioner appealed the decision to the First DCA, Case No. 1D10-5688 (Ex. R).  The First DCA affirmed the judgment per curiam without written opinion on January 20, 2011, with the mandate issuing February 15, 2011 (Exs. S, T).  <u>Bembo v. State</u>, 53 So. 3d 1023 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on March 15, 2011 (doc. 1).  Respondent does not assert a statute of limitations defense (doc. 41).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), <em>overruled on other grounds by</em> <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan</u> <u>v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In <u>Anderson</u>, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  <i>Id.</i>, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  <i>Id.</i>

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan</u> <u>v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to

mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).

In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. <u>Bailey</u>, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* <u>Harris v. Reed</u>, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. <u>Lee v. Kemna</u>, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," <u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," <u>Judd v. Haley</u>, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. <u>Ford v. Georgia</u>, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541 (11th Cir. 1994).

fundamental miscarriage of justice. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[7]

A.    <u>Ground Three: "Petitioner's right to effective representation was denied."</u>

Petitioner asserts the trial court failed to conduct an adequate inquiry into a potential conflict of interest of defense counsel, when Petitioner reported the possible conflict to the trial court (doc. 15 at 8, 12–13). He asserts he wrote a letter to the court stating he wished to have his attorney replaced because counsel failed to visit or contact him, counsel was ignoring him, he was forced to face the prosecutor without an advocate, and counsel had shown no interest in fulfilling his court-appointed duties (*id.*). Petitioner states the trial court set the matter for a hearing on July 31, 2008, but never actually conducted the hearing (*id.*). Petitioner further states his plea hearing was held prior to that date (on July 29, 2008), and he concedes he told the trial court he was satisfied with counsel at the plea hearing (*id.*). Petitioner contends his affirmative response did not relieve the

---

[7] The undersigned has re-ordered Petitioner's claims for organizational purposes.

court from further inquiry as to whether counsel was providing effective assistance (*id.*). He contends the trial court's failure to conduct such an inquiry violated his Sixth and Fourteenth Amendment rights (*id.*). Petitioner states he raised this claim on direct appeal of his conviction (*id.* at 8).

Respondent contends this claim presents only a matter of state law and is thus not cognizable in federal habeas (doc. 41 at 27–29). Respondent additionally contends that notwithstanding the fact that Petitioner did not raise a cognizable claim, the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, because none of Petitioner's complaints alleged ineffective assistance of counsel within the meaning of the Sixth Amendment (*id.* at 29–31). Respondent expressly declined to waive any and all defenses and procedural bars (*id.* at 1, 7).

The record demonstrates Petitioner's claim is procedurally barred. Petitioner raised this constitutional claim in his Rule 3.850 motion (Ex. J at 49–50). The state circuit court held that Petitioner was procedurally barred from relief in the Rule 3.850 proceeding, because the claim could have been raised on direct appeal (Ex. P at 2).[8] The First DCA affirmed the lower court's decision (Ex. K).

The rule that relief under Rule 3.850 is not authorized on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal, is firmly established and regularly followed in the Florida courts, *see* Fla. R. Crim. P. 3.850(c). Therefore, Petitioner's claim is procedurally barred from federal review. Petitioner has not made a showing of cause and prejudice to overcome the procedural bar, nor has he shown he is entitled to a merits review through any other recognized exception to the procedural bar. Therefore, he is not entitled to review of Ground Three.

---

[8] Petitioner did not present a federal claim regarding this issue on direct appeal; rather, he argued only that the trial court failed to conduct a hearing or inquiry into the sufficiency of counsel's representation as required by Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973) (*see* Ex. F). Petitioner thus presented purely a state law issue on appeal. *See, e.g.*, Maye v. Tucker, No. 4:08-cv-577-SPM/GRJ, 2011 WL 6187938, at *8–9 (N.D. Fla. Oct. 26, 2011); *Report and Recommendation Adopted By*, 2011 WL 6817929 (N.D. Fla. Dec. 28, 2011); Allen v. Buss, No. 4:09cv85-MP/WCS, 2011 WL 2532766, at *3 (N.D. Fla. May 25, 2011), *Report and Recommendation Adopted By*, 2011 WL 2531189 (N.D. Fla. June 24, 2011); Kimbrough v. Buss, No. 3:08cv552-LAC/MD, 2011 WL 2414879, at *11 (N.D. Fla. May 20, 2011), *Report and Recommendation Adopted By*, 2011 WL 2374385 (N.D. Fla. June 10, 2011).

Moreover, Petitioner's statement to the trial court, under oath and on the record at the plea hearing, that he was satisfied with his attorney's representation (*see* Ex. C at 4–5), led the trial court to reasonably conclude the issue was resolved. Indeed, at the sentencing hearing, held after the date of the plea hearing and after the date the <u>Nelson</u> hearing had been originally set, Petitioner made no mention of the issue of counsel's representation, let alone specific allegations of ineffective assistance of counsel, when he personally addressed the court (*see* Ex. D). Therefore, Petitioner failed to show a federal constitutional violation with regard to the trial court's failure to inquire into the sufficiency of counsel's representation.

      B.    <u>Ground Two: "Petitioner's [sic] is unlawfully sentenced."</u>

Petitioner contends his sentence of fifteen (15) years on the attempted sexual battery conviction exceeded the statutory maximum, in violation of the Eighth and Fourteenth Amendments (doc. 15 at 7, 11). He contends the crime of sexual battery with slight force is a second degree felony (*id.*). He contends he was convicted of only attempt, which reduced the degree of the crime to a third degree felony carrying a maximum sentence of five (5) years (*id.*). He acknowledges that the habitual offender enhancement increased the maximum sentence, but he contends it increased the maximum to only ten (10) years (*id.*). Therefore, his fifteen-year sentence was unconstitutional as it exceeded the statutory maximum (*id.*). Petitioner states he raised this claim in his Rule 3.800(a) motion (*id.* at 8).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 41 at 25–26).

      1.    Clearly Established Federal Law

A sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime." <u>Ewing v. California</u>, 538 U.S. 11, 21, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (quoting <u>Rummel v. Estelle</u>, 445 U.S. 263, 271, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980)). But "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 77, 123 S. Ct. 1166, 155 L.Ed. 2d 144 (2003). "A sentence that exceeds the statutory maximum has traditionally been viewed as a violation

of the [E]ighth [A]mendment's prohibition against cruel and unusual punishment." <u>Ralph v. Blackburn</u>, 590 F.2d 1335, 137 (5th Cir. 1979); *see also* <u>Ford v. Moore</u>, 296 F.3d 1035, 1037 n.6 (11th Cir. 2002) (citing <u>Ralph</u>, *supra*; <u>Echols v. Thomas</u>, 33 F.3d 1277, 1279 (11th Cir. 1994) ("Although Echols' sentencing claim ultimately turns on a question of State law, it properly falls within the scope of federal habeas corpus review because 'the [E]ighth [A]mendment bars a prison sentence beyond the legislatively created maximum.'")); <u>Austin v. Jackson</u>, 213 F.3d 298, 302 (6th Cir. 2000). The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. *See* <u>Hawkins v. Hargett</u>, 200 F.3d 1279, 1284–85 & n.5 (10th Cir. 1999) (citations omitted).

2.     Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.800(a) motion (Ex. O). The state circuit court adjudicated the claim as follows:

> The judgment and sentence entered on September 23, 2008, reflects Defendant pled *nolo contendere* to the following crimes: Count 1, burglary of a dwelling with assault or battery; Count 2, battery upon a person sixty-five years of age or older; Count 3, attempted sexual battery (deadly weapon or force, likely to cause serious personal injury); and Count 4, petit theft. Defendant was sentenced as a habitual felony offender to be imprisoned as follows: for a term of twenty-five years on Count 1; for a term of five years on Count 2; for a term of fifteen years on Count 3; and time served on Count 4, sentences to run concurrently. (Exhibit A). Sexual battery with a deadly weapon or force is a life felony. § 794.011(3), Fla. Stat. (2007). An attempt of a life-felony offense is a felony of the second degree. § 777.04(4)(c), Fla. Stat. (2007). A habitual felony offender may be sentenced up to a term of imprisonment of thirty years for a second-degree felony. § 775.084(4)(a)(2), Fla. Stat. (2007). Therefore, Defendant is not entitled to relief as a habitual felony offender sentence of a term of imprisonment for fifteen years does not exceed the maximum sentence of thirty years for a second-degree felony.

(Ex. P).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. R, S).

This court must abide by the state court's interpretation of state law. *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Therefore, this court is bound by the state court's

determinations that sexual battery with a deadly weapon or force is a life felony, an attempt of a life-felony offense is a felony of the second degree, and a habitual felony offender may be sentenced up to a term of imprisonment of thirty years for a second-degree felony. However, it is unclear whether these determinations are relevant to the facts of this case. The state court's finding that the judgment reflected that Petitioner pled nolo contendere to attempted sexual battery with a deadly weapon or force likely to cause serious personal injury is only minimally supported by the record. The written judgment is unclear as to the crime to which Petitioner pled (Ex. B at 26). It identifies the crime as "Attempted Sexual Battery (Slig [sic])," which suggests Petitioner pled to attempted sexual battery with <u>slight force</u>, but it lists the applicable statute as § 794.011(3), which is the statute governing sexual battery with a deadly weapon or <u>actual physical force likely to cause serious personal injury</u>. The judgment also states the degree of the crime to which Petitioner pled was a life felony, which is the penalty for sexual battery with a deadly weapon or actual physical force likely to cause serious personal injury; however, this does not account for the fact that the crime was only an <u>attempt</u>, which reduced the degree to a second degree felony, *see* § 777.04(4)(c). The plea colloquy, however, is very clear as to the crimes to which Petitioner pled. It reflects Petitioner pleaded no contest to the crimes announced by the prosecutor, which, in relevant part, included attempted sexual battery with <u>slight force</u>, a crime punishable by five years of imprisonment without habitualization, and ten years with habitualization (Ex. C at 7). Although the written judgment is thus unclear as to the crime to which Petitioner pled, the colloquy is not—Petitioner pled nolo contendere to attempted sexual battery with slight force. The undersigned therefore concludes that Petitioner has demonstrated by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's adjudication of his claim.

Having reached this conclusion, the court must take the final step of conducting an independent review of the merits of Petitioner's claim. The statutory maximum sentence for the crime to which Petitioner pled nolo contendere, that is, attempted sexual battery with slight force, including the habitual felony offender enhancement, which Petitioner does not contest, was ten (10) years of imprisonment. *See* Fla. Stat. §§ 794.011(5); 777.04(4)(d); 775.082(3)(d); 775.084(4)3. Petitioner was actually sentenced to fifteen (15) years of imprisonment on that count (Ex. B at 30).

Therefore, his sentence on that individual count exceeded the statutory maximum.  The undersigned thus concludes that Petitioner's sentence on Count 3 violated the Eighth Amendment.  Accordingly, a writ of habeas corpus should be conditionally granted unless the State of Florida elects to initiate resentencing proceedings within 180 days of the district court's order, in which Petitioner is restored to the position he would have occupied had the sentence on Count 3 been constitutionally error-free, which in this case would be a sentence of ten (10) years of imprisonment on Count 3 to run concurrently with his sentences on Counts 1 and 2.  *See* Hooks v. Workman, 689 F.3d 1148, 1208 (10th Cir. 2012) (granting writ with respect to sentence and directing State to resentence petitioner within reasonable time); Woodall v. Simpson, 685 F.3d 574, 581 (6th Cir. 2012) (remanding to district court with instructions to conditionally grant writ unless State of Kentucky elected to initiate resentencing proceedings within 180 days of district court's order); Hurles v. Ryan, 650 F.3d 1301, 1321 (9th Cir. 2011) (remanding to district court with instructions to grant writ of habeas corpus as to petitioner' sentence unless State of Arizona elected, within 90 days of issuance of appellate court mandate, to resentence petitioner); Miller v. Martin, 481 F.3d 468, 474 (7th Cir. 2007) (remanding to district court with instructions to grant writ of habeas corpus to extent that petitioner must be resentenced); Torres v. Berbary, 340 F.3d 63, 72 (2d Cir. 2003) (issuing writ of habeas corpus releasing petitioner from confinement unless State provided him with new sentencing hearing within ninety days).

     C.     Ground One:  "Ineffective assistance of appellate counsel."

Petitioner contends his appellate counsel was ineffective for failing to argue that his convictions for battery upon a person 65 years of age or older and attempted sexual battery violated principles of double jeopardy, because they were based upon the same underlying acts and occurred during one continuous episode (doc. 15 at 7, 9–10).  Petitioner states he raised this claim in his state habeas petition (*id.* at 7).

Respondent contends Petitioner failed to establish the First DCA's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 41 at 7–25).

     1.     Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

   2.   Federal Review of State Court Decision

Petitioner raised this claim as Issue 3 in his state habeas petition alleging ineffective assistance of appellate counsel (Ex. M at 8–10). The First DCA denied the petition on the merits (Ex. N).

With regard to the "contrary to" prong of the AEDPA standard, although the First DCA did not cite Strickland, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, the record demonstrates that a double jeopardy issue was not preserved for appellate review. Therefore, appellate counsel's failure to raise the issue was not constitutionally deficient.

Furthermore, Petitioner's double jeopardy argument is reasonably considered to be without merit. "The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306, 104 S. Ct. 1805, 1812, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. See Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the

same offense." <u>Justices</u>, 466 U.S. at 307–08 (citation and footnote omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." <u>Missouri v. Hunter</u>, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); <u>Whalen v. United States</u>, 445 U.S. 684, 689, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); <u>Albernaz v. United States</u>, 450 U.S. 333, 344, 101 S. Ct. 1137, 1145, 67 L. Ed. 2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution.");.

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." <u>Garrett v. United States</u>, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985)). Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so "'in the absence of a clear indication of contrary legislative intent.'" <u>Hunter</u>, 459 U.S. at 366 (quoting <u>Whalen</u>, 445 U.S. at 691–92); *see also* <u>Garrett</u>, 471 U.S. at 779 (holding that multiple punishments are permissible "when the legislative intent is clear from the face of the statute or the legislative history"); <u>Ohio v. Johnson</u>, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8, 81 L. Ed. 2d 425 (1984) ("[I]f it is <u>evident</u> that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." (emphasis added)). If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in <u>Blockburger v. United States</u>, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." <u>United States v. Dixon</u>, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993). Although the court

will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes. Hunter, 459 U.S. at 368.

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis. First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct. If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply. If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of Blockburger. Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996).

The language of the Florida criminal statutes defining battery upon a person 65 years of age or older and attempted sexual battery provides no answer to the question of whether the Florida legislature intended to impose cumulative punishments for the same conduct. *See* Fla. Stat. §§ 794.011(h), 810.02(1)(b)1, 810.02(2)(a), 784.041(1) (2005). Therefore, the court will look to Florida's rules of statutory construction. The version of those rules in effect at the time Petitioner committed the criminal offenses provided, in relevant part:

775.021. Rules of construction

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
. . . .
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the

principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2007). Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule. Fla. Stat. § 775.021(4)(b). The exceptions adopt the <u>Blockburger</u> test. *See* <u>State v. Weller</u>, 590 So. 2d 923, 925 (1991).

Petitioner has failed to show that the offenses in the instant case satisfy the first exception. At the time of Petitioner's offense conduct, March 20, 2008 (*see* Ex. B at 8–9), the offense of attempted sexual battery, a third degree felony, had the following five elements:

1. the defendant did some act toward committing the crime of sexual battery, the elements of which are:

    a. the victim was 12 years of age or older;

    b. the defendant committed an act upon or with the victim in which the defendant orally, anally, or vaginally penetrated the victim with his sexual organ, or the defendant's sexual organ had union with the vagina or mouth of the victim, or the defendant vaginally or anally penetrated the victim with an object; and

    c. the act was committed without the victim's consent;

2. the defendant would have committed the crime of sexual battery except that someone prevented him from committing it or he failed.

*See* Fla. Stat. §§ 777.04(1), 794.011(5).

The offense of battery on a person 65 years of age or older, a third degree felony, had the following two elements:

1. the defendant intentionally touched or struck the victim against her will or intentionally caused bodily harm to the victim; and

    2. the victim was 65 years of age or older.

*See* Fla. Stat. §§ 784.03(1), 784.08(2)(c).

The offense of battery upon a person 65 years of age or older required proof that the victim was 65 years of age or older, which is not an element of the crime of attempted sexual battery. Further, the crime of attempted sexual battery required proof that the defendant attempted to penetrate or have union with the victim's mouth, anus, or vagina with his sexual organ, which is not an element of battery. Therefore, the first Blockburger exception does not apply to Petitioner's sentences for these offenses. Furthermore, the second exception is not satisfied because neither of the crimes is a degree of the other.

Additionally, the third exception is not satisfied because although simple battery is a lesser included offense of sexual battery, the factual basis upon which the state court accepted Petitioner's no contest plea demonstrates that two separate batteries occurred during the criminal episode. The prosecutor described the factual basis as follows:

> MR. MOLCHAN [the prosecutor]: Judge, on or about March the 20th of the year 2008 Mr. Bembo entered the residence of one Charlie Steven McQueen. Ms. McQueen is above the age of 65 years . . . . He basically went in the front door, forced his way there, pushed her down and shoved her down, asked for sex and money and demanded those items.
>
> They wrestled and fought during that time frame. He tried to pull down her pants during that type of situation. At least that's what the testimony would be alleged against him. They fought during the course of this particular thing inside her residence. She did not give him permission to enter the residence at that point in time.
>
> She managed to point him in the direction of some change. He went in the direction of the change, grabbed the change, and she was able to push him out the door where she was able to call law enforcement. She called law enforcement. Law enforcement found Mr. Bembo outside the residence with change in his pocket that we would allege came from Ms. Charlie McQueen's residence.
>
> There was also blood on his shirt. The blood was DNA tested. It comes back as belonging to Ms. McQueen. She cut herself during the course of the struggle with a pair of knives. And basically we had that tested, and there was blood on the shirt that belonged to her. And he was caught outside the residence by law enforcement. And that would be the evidence.

MR. DUNKERLEY [Petitioner's counsel]: I believe it was a pair of scissors.

MR. MOLCHAN: Scissors, yes.

MR. DUNKERLEY: Other than that everything was accurate as alleged.

THE COURT: All right. So there's a factual basis.

(Ex. C at 8–9). These facts demonstrate that Petitioner committed a battery (pushed and shoved the victim to the floor) and attempted to commit an additional sexual battery (wrestled and physically fought with the victim and attempted to pull down her pants).

In light of these facts, and for the reasons stated in Respondent's answer regarding the lack of merit of Petitioner's double jeopardy argument (*see* doc. 41 at 16–20), Petitioner's appellate counsel could have reasonably determined that a double jeopardy claim was without merit. Petitioner has failed to demonstrate that the First DCA's denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on Ground One.

    D.    Additional Grounds Asserted in Reply Brief

In Petitioner's reply brief, he appears to raise additional federal claims, including: (1) the amended information failed to allege Petitioner knew that the victim was 65 years of age or older, which was an essential element of the battery charge; (2) defense counsel was ineffective for failing to request a competency evaluation or otherwise raise the issue of Petitioner's mental competence; (3) Petitioner entered his plea with the understanding that he would be sentenced to 140 months of incarceration, as recommended in criminal punishment code scoresheet; and (4) defense counsel was ineffective for failing to communicate a plea offer (doc. 46 at 3–37). However, Petitioner did not seek leave of court to amend his amended petition, as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure.[9]

Further, even if the court liberally construed Petitioner's reply brief as a proposed second amended petition, leave to amend would be properly denied. Although leave to amend is generally freely given, Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), it is by no

---

[9] Petitioner already amended his original petition once as a matter of course (*see* doc. 15).

Case No.: 3:11cv132/MCR/EMT

means guaranteed.  Addington v. Farmer's Elevator Mut., Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).  "The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer." 6 Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1473.  The trial court has considerable discretion when deciding whether to grant or deny a motion for leave to amend.  Addington, 650 F.2d at 666.  "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Local 472, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982); see also Foman, 371 U.S. at 182.

In the instant case, amendment would be futile, because the federal statute of limitations bars all of the claims asserted in the reply brief/proposed second amended petition.  Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In the instant case, Petitioner's allegations do not suggest that a government-created impediment to his filing existed, that he bases any of his proposed new claims on a right newly

recognized by the Supreme Court, or that the facts supporting his proposed new claims could not have been discovered through the exercise of due diligence prior to the date his conviction became final.[10] Thus, the statute of limitations must be measured from the remaining statutory trigger, which is the date on which his conviction became final. *See* 28 U.S.C. § 2244(d)(1).

It is now well established that when a Florida defendant directly appeals his conviction but does not seek certiorari review of the decision affirming the conviction, the one-year limitations period for filing a federal habeas petition begins to run ninety (90) days after issuance of the appellate court's decision.[11] Nix v. Secretary for the Dep't of Corrections, 393 F.3d 1235, 1236–37 (11th Cir. 2004) (citing Bond v. Moore, 309 F.3d 770 (11th Cir. 2002)); Jackson v. Secretary for the Dep't of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); *accord* Clay v. United States, 537 U.S. 522, 525, 123 S. Ct. 1072, 1075, 155 L. Ed. 2d 88 (2003); Close v. United States, 336 F.3d 1283, 1284–85 (11th Cir. 2003). In the instant case, the First DCA issued its decision affirming Petitioner's conviction on March 20, 2009. Petitioner did not seek further review of his conviction; therefore, Petitioner's one-year limitations period began to run on June 19, 2009, upon expiration of the 90-day period for seeking certiorari review.

This court must next address whether the limitations period was tolled pursuant to statutory or equitable tolling principles.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, Petitioner is entitled to statutory tolling from June 19, 2009 to May 20 2010, upon issuance of the First DCA's mandate in Petitioner's Rule 3.850 proceeding (*see* Exs. J, L). One

---

[10] Although Petitioner relies upon Missouri v. Frye, —— U.S. ——, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) and Lafler v. Cooper, —— U.S. ——, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) in support of one of his proposed new claims, the undersigned concludes that neither of those cases recognized a new constitutional right for purposes of § 2244(d)(1)(C). *See* In re: Michael Perez, 682 F.3d 930, 2012 WL 1889150 (11th Cir. May 25, 2012); *see also* Holle v. Sec'y, Dep't of Corr., No. 3:11cv436/LAC/EMT, 2012 WL 2885527 (N.D. Fla. June 27, 2012), *Report and Recommendation Adopted By*, 3:11cv436/LAC/EMT, 2012 WL 2884947 (N.D. Fla. July 13, 2012).

[11] The 90-day period for filing in the United States Supreme Court a petition for writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's opinion. *See* Sup. Ct. R. 13.3.

hundred forty-two (142) days of untolled time elapsed from May 21, 2010 to October 10, 2010, the date Petitioner filed his state habeas petition (*see* Ex. M).  The federal limitations period was tolled until February 15, 2011, the date of the First DCA's mandate in Petitioner's Rule 3.800 proceeding (Petitioner filed his Rule 3.800 motion during the pendency of his state habeas petition, and the state habeas action ended during the pendency of the Rule 3.800 proceeding) (*see* Exs. N, O, T).  The limitations period then ran for 27 days until Petitioner filed his original federal habeas petition on March 15, 2011 (doc. 1 at 24).  Although the limitations clock stopped running on that date for the claims raised in the <u>original</u> petition, and the clock stopped running on November 23, 2011 for the claims raised in the <u>amended</u> petition (*see* doc. 15 at 14), the filing of those federal petitions did not toll the limitations period for the proposed new claims raised in the <u>second amended petition</u>.  *See* <u>Duncan v. Walker</u>, 533 U.S. 167, 181–82, 121 S. Ct. 2120 150 L. Ed. 2d 251 (2001) (application for federal habeas corpus review does not toll the one-year limitation period under section 2244(d)(2)).  The federal limitations period expired on May 26, 2012 (142 + 223 = 365).  Petitioner filed his reply brief/proposed second amended petition on September 24, 2012, which was too late (doc. 46 at 38).

However, the proposed amendment to the amended petition would be considered timely if the amendment "related back" to the original petition.  Rule 15 of the Federal Rules of Civil Procedure provides that an amendment of a pleading relates back to the date of the original pleading when the amended "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempt to be set out—in the original pleading; . . . ." Fed. R. Civ. P. 15(c)(1)(B).  Thus, as long as the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the filing date of the original pleading, even where the revised pleading contains legal theories not included in the original.  *See* <u>White v. White Rose Food, a Div. of DiGiorgio Corp.</u>, 128 F.3d 110, 116 (2d Cir. 1997).  The transaction or occurrence must, however, be based upon the same core facts originally alleged.  In general, relation back is permitted under Rule 15(c) where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading.  *See* <u>Bularz v. Prudential Ins. Co. of America</u>, 93 F.3d 372, 379 (7th Cir. 1996) (citations omitted).  *Accord* <u>Alpern v. UtiliCorp United, Inc.</u>, 84 F.3d 1525, 1543 (8th Cir. 1996).

If, however, a party attempts to interject entirely different conduct or different transactions or occurrences into a case, relation back is not allowed.

Claims made in a federal habeas petition are functionally no different than claims made in other civil litigation. Rule 2(c) of the Rules Governing § 2254 Cases requires that a § 2254 motion shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified. Thus, the initial petition must set forth all available grounds, and each ground must be supported by a summary of facts. The summary of facts provides a basis to determine whether the proposed amended claim arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original motion. Fed. R. Civ. P. 15(c)(2). If it does, and if the initial petition was timely, the amendment containing the new claim will also be timely because it relates back to the original petition.

Following these precepts, courts have applied the relation back doctrine to habeas petitions. In United States v. Craycraft, 167 F.3d 451 (8th Cir. 1999), the Eighth Circuit found that a claim of ineffective assistance of counsel for failing to file an appeal did not relate back for limitations purposes to an original petition that contained claims of ineffective assistance based on failure to take certain actions at the sentencing hearing. *See also* United States v. Duffus, 174 F.3d 333 (3d Cir. 1999), *cert. denied*, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999). In McClain v. Hill, 52 F. Supp.2d 1133 (C.D. Cal. 1999), a claim of error on appeal was held not to relate back to a petition asserting claims of trial error. In Pittman, the Fourth Circuit found that a claim of improper sentencing enhancement based on obstruction of justice did not relate back to an initial petition that claimed improper enhancement based on a previous conviction. United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000).

Generally, then, courts have denied relation back when the new claims "arise from separate occurrences of 'both time and type'" or when the original claims do not provide respondent with notice or awareness of the new claims. Pittman, 209 F.3d at 318; Craycraft, 167 F.3d at 457. Whether a new claim could have been included in the original petition should also be considered. Pittman, 209 F.3d at 318.

In the instant case, all of the grounds raised in Petitioner's original petition asserted claims of ineffective assistance of appellate counsel, with the exception of Ground Five, which asserted a cumulative error claim (*see* doc. 1). None of the grounds asserted in Petitioner's reply brief/proposed second amended petition assert claims of ineffective assistance of appellate counsel (*see* doc. 46). Moreover, none of Petitioner's proposed new grounds relate back to the claims addressed in this Report and Recommendation, which Petitioner asserted in the amended petition. Therefore, none of the proposed amended claims relate back for purposes of the one-year limitations period and are thus time-barred.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right as to Grounds One and Three. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability as to those grounds in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the amended petition for writ of habeas corpus (doc. 15) be **DENIED as to Grounds One and Three**.

2.     That the amended petition for writ of habeas corpus (doc. 15) be **CONDITIONALLY GRANTED as to Ground Two unless the State resentences Petitioner on**

Count 3, within 180 days of the date of the district court's order, restoring Petitioner to the position he would have occupied had the sentence on Count 3 been constitutionally error-free, which in this case would be a sentence of ten (10) years of imprisonment on Count 3 to run concurrently with his sentences on Counts 1 and 2.

      3.       That a certificate of appealability as to Grounds One and Three be **DENIED**.

At Pensacola, Florida, this <u>29th</u> day of October 2012.


<i>/s/ Elizabeth M. Timothy</i>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**